JOSEPH L. BATTAGLIA, Plaintiff-Appellee, v. FRANK P. BATTAGLIA, Defendant-Appellant.

First District (2nd Division)   No. 1—92—0445

Opinion filed June 30, 1992.

William J. Stevens and DeWolfe, Poynton & Stevens, both of Chicago (John C. DeWolfe, Jr., of counsel), for appellant.

Grippo & Elden, of Chicago (Theodore W. Grippo, Irving C. Faber, and Eric D. Brandfonbrener, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Joseph L. Battaglia brought suit for injunctive relief against his brother and co-owner of Battaglia Holding, Inc., Frank P. Battaglia, alleging breach of fiduciary duty, breach of a shareholders agreement, breach of an oral agreement, and fraud, resulting from Frank's purchase of 3,000 shares of Battaglia Holding from their brother Anthony Battaglia. Following hearings, the circuit court issued a preliminary injunction, directing Frank, among other things, to hold in constructive trust the shares he acquired from Anthony. Approximately one year after the issuance of the preliminary injunction, Frank filed a motion to dissolve it, asserting that a recently discovered document disposed of all the grounds upon which the injunction was based. The circuit court denied Frank's motion; Frank appeals the court's denial, contending that the circuit court abused its discretion in denying his motion to dissolve the preliminary injunction.

Beginning in the late 1930's, Joseph, Frank, and Anthony Battaglia worked for their father, August Battaglia, in the family's wholesale produce business. After their father's death in 1950, the three brothers incorporated the family business under the name August Battaglia Co., which has, since that time, expanded into new areas related to the original wholesale business, including food service and restaurant supply (Battaglia Distributing Corporation), nut and food processing (August Battaglia Processing Company, Inc., and Virginia Peanut Processors Company, Inc.), and various other processed food businesses (Beatrice Caramel Apple Company, Inc., and Growers Prepackage Company). Sometime in 1972, the three brothers set up Battaglia Holding, an Illinois corporation, for the purpose of holding the stock of the several Battaglia-affiliated companies. As equal owners, Frank, Joseph, and Anthony each owned 3,000 shares of Battaglia Holding stock. In addition, each of the three brothers served as a director and officer of Battaglia Holding.

On April 30, 1973, the three brothers and Battaglia Holding entered into an agreement (Buy/Sell Agreement) in order to ensure that the family business would continue to be owned exclusively by Battaglia family members and in order to provide a death benefit to each of

the three brothers' wives and children. The Buy/Sell Agreement provided in pertinent part:

"1. So long as this Agreement shall remain in effect, none of the individual parties hereto shall sell, assign, transfer, mortgage, alienate, hypothecate or in any way encumber or dispose of the shares of stock of the corporation which he now owns or which he hereafter acquires, without the written consent of the corporation and of all the then surviving individual parties ***.

2. Upon the death of any of the three officers of the corporation, *** all of the shares hereafter acquired by that officer *** shall be sold to and purchased by the Corporation *** and any balance of such shares *** shall be sold to and purchased by the [surviving brothers], share and share alike ***."

In 1979, by which time the sons of each of the Battaglia brothers had become involved in the family business, the three brothers realized that the Buy/Sell Agreement would prevent their sons from inheriting any ownership interest in Battaglia Holding. Consequently, at an October 1, 1979, directors' meeting, the three brothers agreed to rescind the Buy/Sell Agreement. According to the minutes of the director's meeting,

"[Frank Battaglia] stated that the majority stockholders of the company had a buy-sell agreement between them which provided that in the event of the death of one of them, the stock of the deceased stockholder would be offered to the company for redemption to the extent legally possible and any other balance of the stock would be offered to the remaining stockholders. He said he felt that such an agreement would no longer be in the best interests of the company as it would deprive the deceased stockholders' sons of an ownership interest in the corporation and would eliminate some of the incentive for them to put their best efforts into making the company as large a success as possible.

Joseph Battaglia stated that he was in agreement with Frank Battaglia. He made a motion that the corporation request the majority stockholders to rescind the agreement and to record the revision of the agreement by the corporation. The motion was seconded, voted upon and unanimously passed."

On January 23, 1990, Frank negotiated a stock purchase agreement with Anthony, whereby Frank personally agreed to purchase all of the shares of Battaglia Holding and affiliated companies owned by Anthony and his wife. Under the stock purchase agreement, Frank was to pay Anthony $25,000 of the approximately $1.5 million pur-

chase price, with the balance to be paid off in weekly installments of $1,500, interest-free for the first eight years.

As a result of Frank's purchase of Anthony's stock, on August 13, 1990, Joseph brought suit for injunctive relief against Frank, alleging that Frank, in acquiring Anthony's shares, had breached his fiduciary duty to Joseph, as a co-owner of a close corporation; had breached the Buy/Sell Agreement; had breached an oral contract with Joseph that both Joseph and Frank would equally purchase Anthony's shares; and had committed common law fraud. Joseph sought an injunction providing that the shares of Battaglia Holding stock formerly owned by Anthony be turned over to Battaglia Holding for deposit into the company's treasury, with the company assuming the obligation to pay Anthony; and that Frank and Joseph be deemed equal shareholders in, and the only directors of, Battaglia Holding.

Shortly after Joseph filed suit, Frank called a special meeting of the board of directors of Battaglia Holding. Because Joseph feared that Frank, whom he believed owned two-thirds of Battaglia Holding, would use the special meeting to curtail his rights as a director, he sought an order directing Frank to hold the shares acquired from Anthony in constructive trust on behalf of Battaglia Holding and to refrain from holding a special directors' meeting.

On August 22, 1990, the circuit court entered an order temporarily restraining Frank from holding any meeting of shareholders or directors of Battaglia Holding pending a hearing on the matter. On August 31, 1990, a hearing was held to determine whether a temporary injunction should issue.

The testimony at that hearing established that, although the brothers each supervised and ran separate companies, any decision affecting the Battaglia-affiliated companies was made by mutual consent of the three brothers, with each brother having one "vote." Likewise, each brother received the same salary regardless of his particular company's profits or losses. Moreover, any profits generated by the Battaglia-affiliated companies was funneled into Battaglia Holding rather than paid out as dividends.

According to Joseph, the three brothers ran Battaglia Holding as "a team," and, prior to 1990, always managed to agree on the direction of the company. In 1973, the brothers had agreed that, in order to maintain a family business, they should enforce the Buy/Sell Agreement. In 1979, when it became apparent that that agreement would prevent their sons from inheriting the business, the brothers decided to rescind that portion of the agreement restricting death benefit provisions; the section of the agreement restricting transfers of Battaglia

Holding stock with the consent of each brother, however, remained in force.[1]

Joseph also testified that in 1989, he spoke with Frank about the possibility of the two of them buying Anthony's shares on behalf of Battaglia Holding.[2] Shortly before Christmas 1989, Joseph and Frank agreed that they would buy Anthony's stock for the fair market price to be later determined. Joseph left for Florida immediately after Christmas. Near the end of January, while in Florida, Joseph learned of the stock transaction between Frank and Anthony, and he objected strongly to Frank's actions, telling Frank, "[t]hat's not right."

Joseph further testified that, after he bought the shares, Frank took over the August Battaglia Processing Company, which Joseph had managed for many years and which Joseph's son August was managing at the time. In addition, Frank attempted to fire Joseph and also replaced August with his own son.

Although Frank did not deny buying Anthony's stock for himself, he testified that such an action was necessary to save the company from Joseph's and his son's mismanagement. According to Frank, under Joseph's and August's management, Battaglia Processing Company had developed severe financial problems and had posted large losses. He further testified that Joseph, without either his or Anthony's consent, had made numerous company decisions which the two brothers reluctantly ratified.

Frank further testified that in 1989, because of Anthony's illness, he and Anthony agreed to the sale of Anthony's shares to him. At no time, however, did Frank agree with Joseph that the two brothers would buy Anthony's stock; rather, a day or two before he bought Anthony's stock, Frank informed Joseph that he was buying the shares "to let [Joseph] find out before he found out from anybody else." Furthermore, Frank did not believe that the sale was prohibited by the Buy/Sell Agreement because that entire agreement had been "washed out" at the subsequent 1979 directors' meeting.

---

[1]Since the inception of Battaglia Holding, the three brothers have been the sole directors. Sometime in 1988 or 1989, each brother, by agreement, transferred half his stock to his wife for estate planning purposes. When Anthony transferred shares to his sons, however, Joseph objected to the transfers as prohibited and Anthony then recovered his stock.

[2]Prior to 1989, Anthony had been physically incapacitated and confined to his bed for over 10 years. Although Anthony drew the same salary as the two brothers, his illness prevented him from working to the same degree as his brothers in the business.

According to Anthony, he decided to sell his stock to Frank because he "felt that to save the company [he] had to sell the stock to [his] brother Frank so he could take charge and straighten out the mess that [his] brother Joe and his two boys put it into." However, Anthony admitted that his only knowledge of Joseph's mismanagement of the company came from what Frank had told him; Anthony never spoke with Joseph or his sons about their management of the company. Anthony explained that he had been ill and "on his back" for 14 years and, thus, was unable to participate in the company to the same extent as his brothers; however, he was kept informed by his sons and Frank as to what was happening in the company. Anthony believed the sale of stock to Frank was proper because, as far as he was concerned, he was "at liberty to sell" the shares to whomever he wanted.

In response to Frank's allegations that Joseph mismanaged the company, Joseph's son August testified that the business was cyclical and typically posted losses at certain times of the year while showing large profits at other times. August further testified that between October 1989 and January 1990, prior to his ouster by Frank, the company began a profitable period. Thus, the losses shown by the company were not attributable to his alleged mismanagement of the company nor were the profits a direct result of Frank's later control of the company.

After hearing all the evidence, the circuit court found that Battaglia Holding was a closely held corporation and that it was operated as a partnership among equals. Thus, the court found that, given Frank's position as a director and shareholder of a close corporation, he owed Joseph a fiduciary duty. The court further found that, in acquiring Anthony's stock without permission from either Joseph or Battaglia Holding, Frank "took opportunity as a director without offering that opportunity to the corporation [to which] he had a fiduciary duty." The court also found that Joseph's expectation of continued equality was protected by the 1989 oral agreement in which he and Frank agreed to buy Anthony's shares on behalf of Battaglia Holding, thereby preserving their equal status. Likewise, the court found that Joseph had a right to continued equality based on the first section of the Buy/Sell Agreement, which prohibited one brother's transfer of Battaglia Holding stock without the others' consent.

In response to Frank's argument that his purchase of Anthony's stock did not change Joseph's position as a director, the circuit court stated:

"It's pure, legal sophistry to argue that the sale of Anthony's stock to Frank, rather than to the company, has not changed Joseph's interest.

Prior to that sale, [Joseph] was an equal shareholder with each of his brothers. Subsequent to that purported sale, [Joseph] is a minority shareholder to the only remaining brother in the company.

To suggest that that's not a significant change is to ignore the realities of stock ownership in a corporation.

This stock transfer has changed Joseph's status. The status has changed from a participant in management affairs to either a rubber stamp for Frank or meaningless dissent vote against Frank."

Accordingly, in September 1990, the court ruled that Joseph had a certain and clearly ascertainable right to his continued ownership and control of Battaglia Holding at a level equal to Frank's, that Joseph would suffer irreparable injury if an injunction did not issue, that Joseph did not have an adequate legal remedy, and that Joseph showed a likelihood of succeeding on the merits of his complaint. On September 19, 1990, a preliminary injunction was entered directing Frank to hold the shares of Battaglia Holding acquired from Anthony in constructive trust on behalf of Battaglia Holding; designating Frank and Joseph equal shareholders of Battaglia Holding; and prohibiting any meeting of directors of Battaglia Holding to be called or held. Frank's immediate motion for reconsideration was denied by the court.[3]

On September 16, 1991, Frank moved to dissolve the preliminary injunction, contending that a document discovered after Anthony's death disposed of all the grounds on which the injunction was based. That document, dated November 16, 1979, and signed by all three brothers and Battaglia Holding, provided:

"THIS AGREEMENT MADE THIS 16TH DAY OF NOVEMBER 1979 BETWEEN AUGUST BATTAGLIA HOLDING CO., LTD., ANTHONY J. BATTAGLIA, FRANK P. BATTAGLIA AND JOSEPH L. BATTAGLIA.

IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES HERETO THAT THE BUY AND SELL AGREEMENT ENTERED INTO ON THE 30TH DAY OF APRIL

---

[3]On October 18, 1990, Frank filed an interlocutory appeal of the circuit court's order; that appeal was subsequently dismissed for want of prosecution on March 31, 1992.

1973 IS HEREBY CANCELLED AND HELD FOR NAUGHT."

Frank argued that this document sanctioned his purchase of Anthony's stock because it unambiguously showed the brothers' intention to abandon the equality of ownership that they had always shared. Frank further maintained that the 1979 document evidenced the parties' intent that the corporation's stock could be sold or transferred without limitation.

Following arguments, the circuit court concluded that the bulk of its September 1990 findings was unaffected by the newly discovered 1979 document. Although the court acknowledged that the 1979 document changed its findings with respect to the Buy/Sell Agreement, the court noted that removal of that restriction did not release Frank from the other obstacles to his acquisition of Anthony's stock, namely his fiduciary duty to Joseph and his 1989 oral agreement with Joseph. In denying Frank's motion to dissolve the preliminary injunction, the court stated:

> "The impediment to Frank's purchase of this stock is not relieved by *** this new document. The impediment to Frank's purchase of Anthony's stock arises not from any restriction on stock's transferability, but rather from the fiduciary position which Frank was in as to both the corporation and his partner, brother Joseph.
>
> * * *
>
> The late arriving November 18, 1979 document does not excuse Frank's breach of the duty of loyalty that he owed to the company and to Joseph, his co-equal partner. It does not cloud the reality that Frank was engaged in self-dealing.
>
> It does not authorize Frank's breach of the oral agreement he made with Joseph to have the company buy-out Anthony's shares. And it does not negate forty years of custom and practice regarding unanimity in corporate decisions and undertakings."

Frank initially contends that he had no duty to refrain from buying Anthony's stock, and thus the circuit court erred in granting the preliminary injunction. Specifically, Frank contends that he owed no fiduciary duty to Joseph as another shareholder; that he did not usurp a corporate opportunity; that Joseph had unclean hands and thus could not assert any wrongdoing by him; and that the 1979 document left him free to purchase shares from, or to sell shares to, anyone he wished. Further, Frank maintains that the circuit court's finding that he and his brothers had operated Battaglia Holding through unani-

mous action for 40 years was against the manifest weight of the evidence. Frank further asserts that the court erred in finding an alleged oral agreement between Joseph and him, contending that the agreement was impossible. Finally, Frank maintains that Joseph did not establish his right to a preliminary injunction.

In response, Joseph initially contends that the majority of Frank's arguments are waived; he maintains that the sole issue on appeal is the propriety of the court's denial of the motion to dissolve the temporary injunction based upon the 1979 document and not the propriety of the grant of that injunction. Joseph asserts that, because Frank failed to perfect his appeal from the grant of the preliminary injunction (the appeal having been dismissed by this court), the order issuing the preliminary injunction is now the law of the case and *res judicata* for Frank's present appeal. Thus, Joseph contends that Frank cannot request review of the grant of the preliminary injunction due to his failure both to perfect that appeal and to raise those same issues in his motion to dissolve.

■ "In general a party's failure to timely appeal an order appealable under Rule 307(a) renders that order the law of the case and that part of the resulting judgment *res judicata.*" (*Wolfe v. Illini Federal Savings & Loan Association* (1987), 158 Ill. App. 3d 321, 324, 511 N.E.2d 828.) Correspondingly, the failure to appeal in a timely fashion from a trial court's order denying a motion to dissolve a temporary restraining order renders that order the law of the case from which a later appeal cannot be taken. (*Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 544, 447 N.E.2d 288; *Emerson Electric Co. v. Sherman* (1986), 150 Ill. App. 3d 832, 502 N.E.2d 414; *Baird & Warner, Inc. v. Gary-Wheaton Bank* (1984), 122 Ill. App. 3d 136, 138, 460 N.E.2d 840.) Further, an order or decree from which an appeal might have been taken may not be reviewed on appeal from a subsequent order entered in the same cause. *Baird & Warner, Inc. v. Gary-Wheaton Bank*, 122 Ill. App. 3d at 138-39; *Johnson v. Coleman* (1977), 47 Ill. App. 3d 671, 673-74, 365 N.E.2d 102.

■ In the instant case, on October 18, 1990, after the circuit court entered the preliminary injunction, Frank appealed; however, no briefs or record were ever filed in connection with that appeal and this court subsequently dismissed it on March 31, 1992, refusing to consolidate it with the instant appeal. Thus, although he had the opportunity to appeal the circuit court's grant of the preliminary injunction, Frank neglected to perfect that appeal. Accordingly, he cannot now assert those issues and arguments which he failed to pursue in his first appeal. Rather, he is confined to whatever issues were pre-

sented to the circuit court in his motion to dissolve the preliminary injunction, namely the effect of the 1979 document on the preliminary injunction and Joseph's alleged mismanagement of the company. See *International Association of Firefighters Local No. 23 v. City of East St. Louis* (1990), 206 Ill. App. 3d 580, 565 N.E.2d 264.

Nevertheless, Frank argues that the propriety of the grant of the preliminary injunction is reviewable by this court, relying upon *International Association of Firefighters Local No. 23 v. City of East St. Louis* (206 Ill. App. 3d 580, 565 N.E.2d 264). That case, however, is inapposite. In *International Association of Firefighters*, the respondent argued on appeal that the trial court abused its discretion in refusing to dissolve an injunction. The petitioner replied that the respondent waived any error in the issuance of the preliminary injunction because it failed to raise any such issue or objection prior to the issuance of the injunction. In holding that the respondent did not waive the issue of improper issuance of the injunction, the appellate court relied upon the fact that "[a]ll of the issues raised in this appeal by [the respondent] were before the trial court on the motion to dissolve the injunction." *International Association of Firefighters Local No. 23 v. City of East St. Louis,* 206 Ill. App. 3d at 584.

Unlike *International Association of Firefighters,* "all of the issues raised in this appeal" by Frank were not before the circuit court on his motion to dissolve the injunction. Rather, the only issues presented to the circuit court on the motion to dissolve the preliminary injunction were the impact of the 1979 document on the injunction and the alleged wrongdoing committed by Joseph and his sons. Accordingly, we find that those issues before the circuit court on the motion to dissolve the preliminary injunction are the only reviewable issues on appeal.

Here, the circuit court's denial of Frank's motion to dissolve the preliminary injunction was premised in part on its finding that the 1979 document, though controlling as to the Buy/Sell Agreement, was irrelevant to its earlier findings that Frank breached a fiduciary duty to Joseph and that Frank breached an oral agreement with Joseph. Frank asserts that the court erred in so holding, contending that the 1979 document evidenced the brothers' intent to abandon the equality of ownership, and thus, no fiduciary duty existed.

■■ A party seeking injunctive relief must establish that it has a clear right which ought to be protected; that it is likely to succeed on the merits; that there is no adequate remedy available at law; and that irreparable harm will occur if the injunction is not granted. (*American National Bank & Trust Co. v. Chicago Title & Trust Co.*

(1985), 134 Ill. App. 3d 772, 776, 481 N.E.2d 71.) Correspondingly, the issuance of a preliminary injunction is within the sound discretion of the circuit court upon a *prima facie* showing of necessity. (*Stasica v. Hannon* (1979), 70 Ill. App. 3d 785, 787, 388 N.E.2d 1110.) A court's exercise of discretion in ordering a preliminary injunction and in denying a motion to dissolve that injunction will not be overturned absent a clear showing of abuse. (*American National Bank & Trust Co. v. Chicago Title & Trust Co.*, 134 Ill. App. 3d at 777.) Thus, a court on review will not reverse the judgment of the circuit court unless its ruling constituted an abuse of discretion as being against the manifest weight of the evidence. *American National Bank & Trust Co. v. Chicago Title & Trust Co.*, 134 Ill. App. 3d at 777.

■ In considering the record in the instant case, we find that the circuit court's order denying the motion to dissolve the preliminary injunction did not amount to an abuse of discretion. Indeed, the record supports the court's order.

Contrary to Frank's interpretation of the 1979 document, the conduct of the brothers in the 11 years following 1979 indicates that they had not rejected their traditional way of equally sharing decisions. No sales of stock to outsiders occurred; rather, the brothers' only transfer of Battaglia Holding shares was to their wives, an agreed-upon transfer for estate planning purposes. Although the 1979 document, on its face, cancelled the Buy/Sell Agreement, minutes of the directors' meeting, on which the 1979 document was based, indicate a different desire. Those minutes show that the three brothers wanted to specifically rescind that portion of the Buy/Sell Agreement restricting the inheritance of stock to their sons; no mention of the nontransferability of shares is discussed.

Notwithstanding the conflict, the circuit court nevertheless held that, even if the entire Buy/Sell Agreement were cancelled, the injunction was properly issued on several other grounds, none of which were affected by the 1979 document. In so holding, the court found:

> "It's clear that the document dated November 16, 1979 does not impeach or contradict the evidence, or this Court's findings regarding[:] one[,] the company being a closed corporation; two, *** the fact that the brothers treated it like a partnership; three, the fact that all decisions were unanimous; four, the fact that all unilateral actions were ratified, thereafter unanimous; five, that the percentage of stock ownership was never a consideration in business decisions[;] [s]ix[,] that a pattern and practice of absolute equality between three brothers was not interrupted or changed in any manner by the November 16, 1979

document, and was indeed a pattern and practice which was continuous for forty years[;] [s]even[,] that Frank and Joseph had agreed that the company would buy Anthony's stock[;] [a]nd eight[,] that in the sale of the stock by Anthony to Frank, neither relied on the November 16, 1979 document because neither had any recollection of such an instrument."

Because the record contains substantial support for the circuit court's findings, we find that the court did not abuse its discretion in denying Frank's motion to dissolve the preliminary injunction. The testimony presented at the hearing established that Battaglia Holding was operated as a close corporation. (See *Galler v. Galler* (1964), 32 Ill. 2d 16, 203 N.E.2d 577; *Hagshenas v. Gaylord* (1990), 199 Ill. App. 3d 60, 557 N.E.2d 316, *appeal denied* (1990), 133 Ill. 2d 556, 561 N.E.2d 691.) Here, for over 50 years, one family operated and controlled the Battaglia-affiliated companies. At no time was anyone other than the three Battaglia brothers and their wives a shareholder in the company; rather, since its inception, the three brothers have been the sole directors and officers of Battaglia Holding. Furthermore, the conduct of the brothers over the course of 40 years indicates that they maintained a fiduciary duty to each other similar to that of partners. (See *Illinois Rockford Corp. v. Kulp* (1968), 41 Ill. 2d 215, 242 N.E.2d 228.) Although the 1979 document may have cancelled the brothers' Buy/Sell Agreement, nowhere does the 1979 document evidence the brothers' intent to relinquish their status as equals in the company. We thus find that the court properly held that the 1979 document did not abrogate the pattern and practice of equality between the three brothers.

Although there was some conflict between Joseph's and Frank's testimony concerning whether the two had an oral agreement to purchase Anthony's shares, the court's determination that such an agreement existed is supported by the record. Frank's contention that such a contract was impossible because Anthony would never have consented to the sale of his shares to Joseph is simply not borne out by the record; although Anthony testified that he wanted Frank to run the company because of Joseph's mismanagement, he also admitted that it was Frank who had informed him of the alleged mismanagement. Accordingly, we do not find that the court abused its discretion in denying the motion to dissolve the injunction.

Furthermore, Frank's contention during oral arguments that Joseph "waived" his right to object to the sale of the shares because he did nothing for eight months after the transaction must fail. This argument was neither raised in the briefs on appeal, nor was it

addressed in the circuit court. It is axiomatic that issues not raised in the circuit court are deemed waived and may not be raised for the first time on appeal. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500-01, 475 N.E.2d 872; see *Holmstrom v. Kunis* (1991), 221 Ill. App. 3d 317, 325, 581 N.E.2d 877.

Based on the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO and McCORMICK, JJ., concur.