SIXTH DIVISION

December 2, 2005

No. 1-03-3708

ANDERSON DUNDEE 53 L.L.C.; WINIFRED ) Appeal from the

BOFFO-McCOY; CARL BOFFO; THOMAS CAYLOR; ) Circuit Court of

ZORINA CAYLOR; CLAYTON and BARBARA ) Cook County

CITRANO; D C COMPASS, LLC; EDMUNDS 1500 )

DUNDEE, LLC; HANNAH 1500, LLC; HOWES )

1500 DUNDEE, LLC; HUEY 1500 DUNDEE, LLC;)

KELLEY 1500, L.L.C.; KLUCKHOHN 1500 )

DUNDEE, LLC; MARTINEZ 1500 DUNDEE LLC; )

LAWRENCE McCUNE; BARBARA McCUNE; JAMES )

D. and JUNE M. MERCER; MOCKINGBIRD )

RESOURCES LLC; 1500 WEST DUNDEE MORELAN,)

LLC; NELSON ROOFING 1500 DUNDEE, LLC; )

OAK PROPERTIES DUNDEE 53, LLC; RALPH C. )

OGDEN III; JONI F. OGDEN; ORTH 1500 )

DUNDEE, LLC; DONALD R. and CARLEE )

PETELLE; ROGER and CAROL POIRIER; CW )

PURDOM 1500 DUNDEE, L.L.C.; PW PURDOM )

1500 DUNDEE L.L.C.; GILBERT REESE; )

FREDERICK L. RICHARDS and JENNIFER )

GOODMAN, SFS, L.L.C.; SANTINI 1500 )

DUNDEE, L.L.C.; SUCHY 1500, LLC; TF REAL)

ESTATE 1500 LLC; WENTWORTH 1500 DUNDEE, )

LLC; and REDD RASMUSSEN 1500 LLC, )

)

Plaintiffs-Appellees, )

)

v. ) )

JOHN TERZAKIS; ROXANNE GARDNER; and )

URBAN INVESTMENT TRUST, INC., )

)

Defendants-Appellants )

)

(Rudy Mulder; Dundee 53, LLC; Master )

Dundee 53, LLC, a Delaware limited )

liability company; Manager Dundee 53, )

Inc., an Illinois corporation; )

CenterPoint Properties Trust; and Thomas)

P. Lowery and Associates, Ltd., ) Honorable

) Aaron Jaffe,

Defendants). ) Judge Presiding

JUSTICE McNULTY delivered the opinion of the court:

The trial court held appellants in contempt for disobeying an order for the corporate appellant to turn over certain funds to a receiver.  The court later denied appellants' motion to purge the contempt.  On appeal from denial of the motion to purge appellants seek review of the original turnover order and the contempt order, as well as the finding that they failed to purge the contempt.

We hold that we lack jurisdiction to review the merits of the turnover order and the contempt order.  We find that the trial court had jurisdiction to order the corporation to turn over the funds, and it had jurisdiction to hold corporate officers in contempt for disobeying the order.  However, the trial court lacked jurisdiction to hold in contempt an appellant who no longer served as an officer of the corporation at the time the court ordered the corporation to turn over the funds at issue.  The evidence at the purge hearing supported the court's finding that the corporate appellant and its officers failed to purge the contempt.  Thus, we affirm the judgment in part and we vacate the judgment in part.

BACKGROUND

Urban Investment Trust sought to purchase a commercial development called the Honeywell property.  To facilitate the transaction it created a corporation it named Master Dundee 53 to serve as the property's master tenant.  Tenants of the property paid rent and property taxes to the master tenant.  The master tenant forwarded the sums it collected to Urban.  Urban and the master tenant failed to pay the property taxes for 2000 and they allowed property insurance to lapse.  In March 2002 the 
plaintiff
s, tenants of the Honeywell property, sued Urban and the master tenant for mismanaging the property.  The trial court appointed a receiver to manage the property during proceedings on the complaint.  The court gave the receiver responsibility for collecting and paying taxes and purchasing insurance for the property.

In July 2002 the receiver moved for an order compelling Urban to turn over to the receiver more than $4 million Urban received in connection with the Honeywell property.  At a hearing in July 2002, Roxanne Gardner testified that she had been president of Urban until November 2001, when she resigned.  She admitted that CenterPoint Properties, a tenant at the Honeywell property, bought out its obligation under its lease for $2.5 million.  CenterPoint paid $1.5 million directly to Urban, and the balance of more than $1 million cancelled a promissory note reflecting a personal debt John Terzakis owed to CenterPoint.

Terzakis testified at a further hearing in August 2002 that only Gardner, Rudy Mulder and he, who served as Urban's officers, had authority to sign checks disbursing Urban's funds.  The same three persons owned Master Dundee 53, and Master Dundee 53 had contractual responsibility for paying taxes on the Honeywell property.  Terzakis admitted that when Urban received funds specifically from the Honeywell property, it put the funds into its own account, mixed with funds for operating many other properties.

A witness for 
plaintiff
s testified that 
plaintiff
s wired to Master Dundee 53 more than $700,000 for payment of property taxes from September 2000 through December 2001.

On December 12, 2002, the trial court ordered "Urban and its[] officers *** to transfer *** funds, in the amount of $3,336,423.01, to the Receiver."  The court amended the December 12 order on January 3, 2003, to identify "John Terzakis, Rudy Mulder and Roxanne Gardner as the officers of Urban to whom the [turnover] Order applies."  Urban filed a notice of appeal from the December 12 order, but this court, on Urban's motion, dismissed the appeal.

The receiver, on January 7, 2003, moved for a rule to show cause why Urban and its officers should not be held in contempt for violating the December 12 order.  The trial court issued the rule on January 13, 2003, and set the matter for hearing on the allegations of contempt.  Urban filed its answer to the rule on January 16, 2003, and presented Terzakis as its first witness on that date.  Terzakis testified that Urban had no money with which to pay the turnover amount.

On January 24, 2003, 
plaintiff
s filed an amended complaint that added CenterPoint and others as new 
defendant
s.  Terzakis and Gardner testified further in the contempt proceedings on January 29, 2003.  The court continued the matter to permit Mulder to testify on March 5, 2003.

Before completion of the testimony in the contempt proceeding, CenterPoint and other parties filed motions for substitution of judge as of right.

The court completed the hearing on the rule to show cause in March, and on March 31, 2003, the court entered an order in which it held that it retained jurisdiction to complete the contempt hearing, despite CenterPoint's motion for substitution of judge.   In the order the court said:

"[T]he court finds Urban and its[] officers, Mr. Terzakis, Mr. Mulder and Ms. Gardner in contempt of court.  Accordingly, upon the entry of this order the aforementioned individuals shall be fined in the amount of $2500 each per day until such time that they either comply with the turnover order and tender the funds to the Receiver or provide the court with a detailed financial history of the turnover funds, which the court accepts.

* * *

*** The defendants are ordered to comply with this order immediately and the imposition of the $2500 fine shall begin to accrue as of April 8, 2003."

In the same order the court recounted Gardner's testimony that she "relinquished her position with Urban."  The court commented that it "believe[d] that Ms. Gardner left because she felt Mr. Terzakis and Mr. Mulder were pushing her towards impending legal action, such as this matter."  On April 8, 2003, the court amended the March 31 order to state explicitly its finding that "Roxanne Gardner was formerly a principal of Urban."

On April 7, 2003, Urban, Terzakis and Gardner filed a notice of appeal from the contempt order.  Two weeks later the trial court granted their motion to dismiss voluntarily the notice of appeal.  Terzakis moved to vacate the contempt order as void.  Although the record on appeal does not include Gardner's motion to vacate the contempt order, the record does include her reply in support of her motion to vacate.  

The trial court heard the two motions to vacate in May and on May 22, 2003, the court denied both motions.  The court added:

"[T]here will be an evidentiary hearing at 1:30 p.m. on May 29, 2003[,] on contemnors' oral Motion to Purge Contempt."

The record on appeal does not include a transcript of the May 22 proceedings, so we do not know the precise language of the oral motion to purge the contempt.  No party appealed from denial of the motion to vacate the contempt order.

At the hearing on the motion to purge, Urban's accountant admitted that the master tenant had its own bank account, entirely separate from Urban's bank accounts.  The money tenants paid for taxes went first to the master tenant and then to Urban.  Gardner testified that Urban put all such funds in its own accounts for "ease of accounting."  She admitted that she could not tell from the books of account what happened to the money Urban received when CenterPoint bought out its obligations under its lease for part of the Honeywell property.  She also could not tell what happened to the money Urban received from the master tenant when the tenants paid their property taxes.

Urban's accountant testified that during March 2001, the month Urban received $1.5 million from CenterPoint for the buyout of its lease, Urban received a total of more than $11 million from all its sources.  Urban used the $1.5 million as part of its general accounts, and it paid it out as part of its expenditures for that month.  The expenditures that month exceeded $11 million.

The accountant listed for the court all of the payees of the $11 million in expenses, although he did not often specify the amount of each payment.  Urban paid Mulder more than $70,000 that month; the books of account did not explain the payment.  The books showed several entries simply as "funding" for other entities Urban controlled, much the way it controlled the master tenant for the Honeywell property.  Urban paid Terzakis $55,000, and it separately funded a number of "entit[ies] that Johnny [Terzakis] owned and/or managed."  The accountant admitted for many payments he did not "know what that's actually for."  Urban paid $208,000 to Illinois Petroleum, "a company that Johnny owns."  The accountant could not determine the purpose of the payment to Illinois Petroleum.  Urban used some of the funds for mortgage payments for other properties it owned, and it made some political contributions.

Due to scheduling difficulties the hearing on the motion to purge extended over six hearing dates from May 2003 to September 2003.  On November 26, 2003, the court entered its order finding that Urban, Terzakis and Gardner failed to purge the contempt.  Because Mulder filed a bankruptcy petition, the court reserved all issues related to him, pending resolution of the bankruptcy proceedings.  The court summarized the testimony and addressed the motion:

"So we now must ask the questions.  Was the order of contempt purged?  Did the contem[n]ors turn over, to the receiver the funds that Urban was given which proceeds were to be used for taxes, mortgage payments and expenses of the Honeywell property?  Was the Court shown that the funds were used for purposes intended under the *** cont[r]acts?  Was the court told why Urban had control of the Honeywell funds?  The answer to all of the above questions is a resounding 'No.'

*** What is given the court is the answer that they do not have the ability to pay what the court ordered them to turn[]over.

That does not purge the contempt.  What it does is concede and admit to the court that they misappropriated millions of dollars for their own purposes.  They admit that they violated their fiduciary obligations to the Honeywell tenants in common and appropriated funds for uses of their own.  John Terzakis, Rudy Mulder and Roxanne Gardner commingled assets of different entities that they owned and controlled.  Corporate identities meant nothing to them.

*** [T]he parties concede that they misappropriated funds and used them for their own purpose.  They do not explain what the money was used for.  They treat it as their own.

*** All that is shown is that Urban was depleted for their own benefit.  While they are so acting the Honeywell property was put on the brink of being lost.  Mortgages and taxes were not paid and the 
plaintiff
s were and are in serious danger of losing their property. ***

Therefore the court finds that the contempt has not been purged by any party ***.

***

*** As to John Terzakis the Court finds that the contempt order is not purged.  Further, the court finds the contempt to be willful and malicious.  *** Instead of coming forth and being honest with the court, Terzakis sends forth his underlings in an attempt to mislead the court.

*** It is hereby Ordered *** that judgment be entered against John Terzakis in favor of the 
plaintiff
s and receiver in the amount of $572,500.00 for 229 days pursuant to the contempt of court order, which represents the amount of the daily assessments times the number of days that order has presently been pending and is in default.

* * *

*** As to Roxanne Gardner, the court finds that the contempt order is not purged.  *** She knowingly fronts for John Terzakis and Rudy Mulder.  It is further ordered *** that judgment is entered against Roxanne Gardner for $572,500.00 for 229 days pursuant to the contempt order."

Urban, Terzakis and Gardner filed a notice of appeal on December 15, 2003.  They sought review of the original turnover order dated December 12, 2002, the order dated January 3, 2003, that identified Terzakis, Mulder and Gardner as Urban's officers, the January 13 order for a rule to show cause, the contempt order dated March 31, 2003, the denial of the motions to vacate the contempt by order dated May 22, 2003, and the order of November 26, 2003, in which the court found that Urban, Terzakis and Gardner failed to purge the contempt.

Plaintiffs filed a motion to dismiss the appeal as untimely insofar as 
appellant
s attempted to challenge any order other than the order dated November 26, 2003.  This court denied the motion to dismiss the appeal.  The parties briefed issues concerning all of the orders listed in the notice of appeal.

Urban moved to strike from 
plaintiff
s' brief the statement of facts.  We took the motion with the case.

ANALYSIS

Motion to Strike

We first address the motion to strike the statement of facts from 
plaintiff
s' brief.  We agree with appellants that 
plaintiff
s' brief includes many purported statements of fact without proper supporting citations to the record.  See 188 Ill. 2d R. 341(e)(6).  
Plaintiff
s cite to their own complaints as support for many statements of fact regarding the transactions between 
plaintiff
s, the master tenant, and Urban.  Allegations in a complaint do not qualify as evidence of the facts alleged.  See 
Gabriel v. Columbia National Bank of Chicago
, 228 
Ill. App. 3d
 240, 247 (1992).

However, this court will not strike a party's statement of facts unless it includes such flagrant improprieties that it hinders our review of the issues.  
Lock 26 Constructors v. Industrial Comm'n
, 243 
Ill. App. 3d
 882, 886 (1993).  We find that the improprieties here do not significantly hinder our review.  Thus, we will not strike 
plaintiff
s' statement of facts, but we will disregard any inappropriate or unsupported statements.  See 
Lock 26 Constructors
, 243 
Ill. App. 3d
 at 886.

Appellate Jurisdiction

Although this court has denied 
plaintiff
s' motion to dismiss parts of the appeal, "the denial of a motion to dismiss an appeal prior to briefing and argument is not final and may be revised at any time before the disposition of the appeal.  
[Citations.] 
 This court has an obligation to consider its jurisdiction at any time and should dismiss an appeal if jurisdiction is lacking." 
Hwang v. Tyler
, 253 
Ill. App. 3d
 43, 45 (1993).

Urban argues that the original turnover order dated December 12, 2002, has the effect of a mandatory preliminary injunction.  See 
Electronic Design & Manufacturing, Inc. v. Konopka
, 272 
Ill. App. 3d
 410, 415 (1995).  Urban filed a timely notice of appeal from the turnover order, but this court later granted Urban's motion to dismiss the appeal.

In 
Battaglia v. Battaglia
, 231 
Ill. App. 3d
 607 (1992), the trial court similarly entered a preliminary injunction and the 
defendant
 filed a timely notice of appeal.  The appellate court dismissed the appeal when the 
defendant
 chose not to pursue it.  The 
defendant
 later moved the trial court for dissolution of the injunction.  When the court denied the motion, the 
defendant
 filed a new notice of appeal.  On appeal he argued that the trial court erred when it entered the preliminary injunction.  
Battaglia
, 231 
Ill. App. 3d
 at 614.  The appellate court held that it lacked jurisdiction to consider the argument.  
Battaglia
, 231 
Ill. App. 3d
 at 616.  The court said:

"[A]lthough he had the opportunity to appeal the circuit court's grant of the preliminary injunction, [the 
defendant
] neglected to perfect that appeal. Accordingly, he cannot now assert those issues and arguments which he failed to pursue in his first appeal. Rather, he is confined to whatever issues were presented to the circuit court in his motion to dissolve the preliminary injunction."  
Battaglia
, 231 
Ill. App. 3d
 at 615-16.

See also 
Busey Bank v. Salyards
, 304 
Ill. App. 3d
 214, 218 (1999) (on review of judgment holding 
defendant
s in contempt for failure to turn over funds, failure to appeal turnover order left appellate court without jurisdiction to review merits of turnover order).

Urban, Terzakis and Gardner counter that this court has jurisdiction to review the turnover order as a procedural step leading to the appealable order finding that they failed to purge the contempt.  In 
Maggio v. Zeitz
, 333 U.S. 56, 92 L. Ed. 476, 68 S. Ct. 401 (1948), the Court similarly faced an appeal from a final order in a contempt proceedings where the trial court found that the appellants failed to comply with a turnover order.  The Court said:

"The question now arises as to whether, in this contempt proceeding, the Court may inquire into the justification for the turnover order itself. It is clear however that the turnover proceeding is a separate one and, when completed and terminated in a final order, it becomes 
res judicata
 ***.

*** The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience. Every precaution should be taken that orders issue, in turnover as in other proceedings, only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order. But when it has become final, disobedience cannot be justified by re-trying the issues as to whether the order should have issued in the first place."  
Maggio
, 333 U.S. at 68-69, 92 L. Ed.2d at 486-87, 68 S. Ct. at 407-08.

See also 
In re Amdur
, 137 F.2d 708, 710 (3d Cir. 1943) (turnover order is 
res judicata
 in subsequent contempt proceeding based on violation of turnover order).

We find the reasoning of 
Maggio
 applicable here.  Under that reasoning, and following 
Battaglia
, we find that we lack jurisdiction to review the original turnover order on its merits because 
defendant
s failed to pursue a timely appeal from that order.

Urban, Terzakis and Gardner also failed to pursue timely appeals from the order of January 3, 2003, which modified the turnover order.  We lack jurisdiction to consider the merits of that order.

Next, Urban, Terzakis and Gardner challenge the rule to show cause entered on January 13, 2003, and the subsequent order of March 31, 2003, finding them in contempt of court.  The March 31 order imposed fines and provided that Urban and its officers could purge the contempt by complying with the turnover order or by supplying a detailed financial history of the turnover funds.  Again, appellants filed a timely notice of appeal from the contempt order, but they voluntarily dismissed the appeal.  Instead they pursued timely postjudgment motions to vacate the contempt order.  But following denial of the motions to vacate on May 22, 2003, they filed no timely notice of appeal.

Appellants argue that their oral motion to purge the contempt, presented in court on May 22, 2003, extends the time for appeal from the contempt judgment.  We disagree.  To extend the time for appeal, a party must file a postjudgment motion "directed against the judgment."  155 Ill. 2d R. 303(a).  Appellants' motions to vacate the judgment qualified as postjudgment motions directed against the judgment, but they filed no appeal from denial of those motions.  In hearings on the subsequent motion to purge, they attempted to prove that they complied with the court's order.  A motion in which the party claims that it has abided by the judgment is not a motion directed against the judgment.  
Lewis v. Loyola University
, 149 
Ill. App. 3d
 88, 92 (1986).  The oral motion to purge the contempt did not extend the time for appealing from the contempt judgment.

"[A]n order finding a person in contempt and imposing a monetary or other penalty is immediately appealable. 
***
 Contempt citations *** must be appealed within 30 days of their entry or be barred."  
Revolution Portfolio, LLC v. Beale
, 341 
Ill. App. 3d
 1021, 1025 (2003).  The failure to file a timely appeal from the contempt order imposing sanctions deprives this court of jurisdiction to review the merits of the contempt order of March 31, 2003, the denial of the motion to vacate the contempt, dated May 22, 2003, and the initial rule to show cause entered January 13, 2003.  See 
Longo v. Globe Auto Recycling, Inc.
, 318 
Ill. App. 3d
 1028, 1036 (2001); 
Davis v. Bughdadi
, 120 
Ill. App. 3d
 236, 240 (1983).

Appellants filed a notice of appeal within 30 days of the order in which the court found that appellants failed to purge the contempt.  Nothing remains for the trial court to do concerning the contempt against appellants except to enforce its judgment.  Therefore the order qualifies as a final judgment concluding the separate contempt proceedings against these parties, and we have jurisdiction to review that judgment.  See 
People ex rel. Scott v. Silverstein
, 87 Ill. 2d 167, 172 (1981); 
United States v. Brumfield
, 188 F.3d 303, 306-07 (5th Cir. 1999).

Although we lack jurisdiction over the attempted direct appeals from the turnover order and the contempt order, the timely appeal from denial of the motion to purge gives us authority to consider some of appellants' arguments concerning the prior orders.  In this respect the case bears similarity to 
In re Estate of Pinckard
, 94 
Ill. App. 3d
 34 (1981).  In that case the trial court ordered several lawyers to turn over certain funds to an estate, and the lawyers filed a notice of appeal from the turnover orders, but they abandoned it.  The court later held the attorneys in contempt for failing to turn over the funds.  On appeal from the contempt order the court said that the turnover orders, "being final orders, cannot now be attacked as being improper or wrong in substance but can only be attacked on limited grounds such as the trial court's lack of jurisdiction to enter them."  
Pinckard
, 94 
Ill. App. 3d
 at 44.  Accordingly, on this appeal we have authority to address appellants' arguments that the trial court lacked jurisdiction to enter the orders of December 12, 2002, January 3, 2003, January 13, 2003, March 31, 2003, and May 22, 2003.

Trial Court Jurisdiction

A trial court has jurisdiction to decide any case over which it has subject matter jurisdiction, as long as it obtains personal jurisdiction over the parties.  
Steinbrecher v. Steinbrecher
, 197 Ill. 2d 514, 530-31 (2001).  The parties here do not contest the trial court's jurisdiction over the subject matter of the case.  Urban admits that the trial court obtained personal jurisdiction over it prior to December 2002.  Therefore, the trial court had jurisdiction to order Urban to turn over to the receiver the funds it received in connection with the Honeywell property.

"It is well settled that corporate officers are obligated to obey judicial orders directed at their corporations."  
City of Chicago v. Air Auto Leasing Co.
, 297 
Ill. App. 3d
 873, 879 (1998).  In the order dated December 12, 2002, the trial court directed "Urban and its[] officers" to turn over certain funds.  The trial court had jurisdiction to enter the turnover order of December 12, 2002.

Gardner and Terzakis claim that the court lacked jurisdiction to enter the order dated January 3, 2003, identifying them as officers of Urban, because the court had not obtained jurisdiction over them as individuals.  However, the court had jurisdiction to enter orders against Urban, and thereby to obligate Urban's officers to comply with the orders.  The identification of the officers so bound did not exceed the court's jurisdiction.  The court's inherent authority to enforce its orders gave it jurisdiction to enter the rule to show cause, again directed against Urban and its officers.  See 
Sanders v. Shephard
, 163 Ill. 2d 534, 540 (1994).

Appellants claim that the trial court lacked jurisdiction to enter the contempt order dated March 31, 2003, because CenterPoint and others, in February 2003, filed motions for substitution of judge as of right.  In general, the court must grant any timely filed petition for substitution of judge as of right, and the court lacks authority to enter any other order in the proceeding in which the party presented the petition.  
In re Dominique F.
, 145 Ill. 2d 311, 324 (1991).  

CenterPoint presented its petition for substitution of judge only in the underlying proceedings here, and not in the independent, collateral contempt proceedings.  See 
In re Marriage of Alush
, 172 
Ill. App. 3d
 646, 650 (1988).  None of the orders listed in the notice of appeal apply to CenterPoint or any other party who filed a motion for substitution of judge as of right.  Moreover, CenterPoint filed its motion for substitution of judge after the court had begun evidentiary hearings on the rule to show cause.  Usually, the trial court should hear and dispose of motions in the order in which the parties filed them.  
Dominique F.
, 145 Ill. 2d at 324. We find that CenterPoint's motion for substitution of judge did not deprive the trial court of jurisdiction to complete the proceedings it had already commenced against other parties on the contempt allegations.  

Next, appellants argue that the contempt order is void because it is too vague and it lacks a sufficient statement of supporting facts.  Appellants cite no authority for the proposition that such defects make the order void.  By failing to cite authority appellants waived the issue.  See 
Charter Bank v. Eckert
, 223 
Ill. App. 3d
 918, 929 (1992).  Moreover, the court order includes extensive findings of fact, and we see nothing vague about the order directing Urban's officers to pay $2,500 a day until they purge themselves of contempt, either by transferring from Urban to the receiver $3,336,423.01, or by providing a detailed history of the funds Urban received for the Honeywell property.  See 
Doe v. Lutz
, 253 
Ill. App. 3d
 59, 65-66 (1993).

Appellants contend that the use of the phrase "that the court accepts" in the contempt order renders the order too vague for enforcement.  We disagree.  With virtually all court orders, the court retains jurisdiction to determine whether the parties have complied.  
Smithberg v. Illinois Municipal Retirement Fund
, 192 Ill. 2d 291, 297-98 (2000).  A party's purported compliance with any order will not discharge its responsibility unless the court finds the compliance acceptable.  For example, in 
Armstrong v. Guccione
, 351 F. Supp. 2d 167 (S.D.N.Y. 2004), the court ordered Armstrong, a corporate officer, to turn over certain corporate assets in his possession.  Armstrong turned over some of the assets and testified that he gave others as gifts and transferred some to business associates.  
Armstrong
, 351 F. Supp. 2d at 170.  The court found Armstrong's explanation inadequate.  
Armstrong
, 351 F. Supp. 2d at 170.  Acceptability to the court of the contemnor's performance of purging conditions is an implicit component of any contempt order.  The inclusion of superfluous surplusage in the trial court's order here did not make it vague, and it did not invalidate the order.  
Godfrey v. Brown
, 81 Ill. App. 2d 453, 455 (1967).

Terzakis argues that the court lacked jurisdiction to hold him in contempt for Urban's violation of the December 2002 order.

"'A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt.'"  
People v. Rezek
, 410 Ill. 618, 628 (1951), quoting 
Wilson v. United States
, 221 U.S. 361, 55 L. Ed. 771, 31 S. Ct. 538, 543 (1911).

Thus, the court had jurisdiction to hold Urban's officers, including Terzakis, in contempt for violation of the turnover order.

Gardner separately challenges the court's jurisdiction to enter the contempt order against her.  In that order the court recounted Gardner's testimony that she relinquished her position as an officer of Urban, and the court found that "Gardner left" Urban.  The court later amended the contempt order to state explicitly that "Gardner was formerly a principal of Urban."  The court had jurisdiction over Urban at the time it entered the turnover order dated December 12, 2002, but this jurisdiction extended only to Urban and its officers.  The court's jurisdiction did not extend to former officers who lacked authority to act on behalf of Urban at the time the court entered the turnover order.  Cf. 
Rezek
, 410 Ill. at 628-29.

Plaintiff
s point to evidence in the record that Gardner remained an officer of Urban throughout the proceedings, as she admitted her continuing close ties to Terzakis and his corporations.  While we agree that the record includes such evidence, the trial court unequivocally accepted contrary evidence that Gardner had resigned from Urban as of November 2001.  On this record, with contradictory evidence, we will not disturb the trial court's finding of fact that Gardner had resigned before the court entered its first order in this case.  Because the contempt order on its face compelled Gardner to act on behalf of a corporation for which she no longer served as an officer, we find the contempt order void as applied to Gardner.  See 
JoJan Corp. v. Brent
, 307 
Ill. App. 3d
 496, 507 (1999).  Accordingly, we vacate the sanctions imposed against Gardner. 

Purge Order

At last we reach the only issue before us for direct review.  Terzakis and Urban filed a timely appeal from the trial court's judgment entered on its finding that Terzakis and Urban failed to purge themselves of contempt.  We review the decision on a motion to purge for abuse of discretion.  
In re Marriage of Wassom
, 165 
Ill. App. 3d
 1076, 1079 (1988).

Terzakis and Urban presented evidence that after they received more than $700,000 for payment of property taxes and $1.5 million from a lease buyout, and after cancellation of Terzakis's personal debt of more than $1 million to CenterPoint, all in connection with the Honeywell property, Urban and Terzakis failed to pay the property taxes and they allowed insurance to lapse.  During the month in which Urban received the $1.5 million, it received in excess of $11 million in income and it spent more than $11 million.  Many of its payments went to various other projects Terzakis sought to pursue.  The Urban accountant who testified could not tell the purpose of the expenditures, except that they "fund[ed]" Terzakis's preferred projects.  The court asked what Urban and Terzakis did with money they received from the Honeywell tenants, especially funds for taxes.  Terzakis and Urban answered, in effect, that they hid it under other shells Terzakis operated.  On this evidence we cannot say that the trial court abused its discretion by holding that Terzakis and Urban failed to purge themselves of contempt.  See 
Armstrong
, 351 F. Supp. 2d at 170.

Finally, Terzakis contends that the trial court abused its discretion by imposing a fine of $2,500 per day for 229 days because the trial court delayed proceedings on the motion to purge.  Terzakis cites no authority in support of the argument.  Accordingly, we find the argument waived.  See 
In re Marriage of Hunter
, 223 
Ill. App. 3d
 947, 955 (1992).

The trial court had jurisdiction to enter the order directing Urban and its officers to turn over to the receiver funds Urban received for the Honeywell property.  The court also had jurisdiction to hold Urban and its officers in contempt for failing to obey the turnover order.  Because the court, in the contempt order as amended, expressly found that Gardner no longer served as an officer of Urban, the order shows that the court lacked jurisdiction to hold her in contempt for Urban's failure to comply with the turnover order.  We lack jurisdiction to review the turnover order and the contempt order on their merits because Urban and Terzakis failed to pursue appeals from those orders.  We review on the merits only the order in which the court held that Urban and Terzakis failed to purge themselves of contempt.  The trial court did not abuse its discretion in holding that they failed to purge the contempt.  Therefore, we affirm the judgment against Terzakis and Urban, and we vacate the judgment against Gardner.

Affirmed in part and vacated in part.

FITZGERALD-SMITH and O'MALLEY, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING:

JUSTICE McNULTY delivered the supplemental opinion of the court:

Urban and Terzakis raise several issues, including a new challenge to the trial court's jurisdiction, on petition for rehearing.  First, they seek to appeal from an order dated December 19, 2002, that identified Terzakis and Mulder as the officers of Urban to whom the order dated December 12, 2002, applied.  We did not discuss this order previously because Urban and Terzakis did not list the order in their notice of appeal.  We see no need to review the order now, because the trial court on January 3, 2003, entered an order that superceded the December 19 order.  The order of January 3, 2003, discussed in our original opinion, identified Terzakis, Mulder and Gardner as the officers of Urban ordered to comply with the December 12 order.  Because the December 19 order had no effect on the disposition of the contempt charge, we will not review that order.  See 
Simmons v. Garces
, 198 Ill. 2d 541, 566-67 (2002).

Urban and Terzakis also contend that we should have considered the merits of the argument that the trial court abused its discretion by fining them for the 229 days the court took to complete the hearing on the petition to purge the contempt.  We declined to review the issue because Urban and Terzakis failed to cite any pertinent authority.  On petition for rehearing they cite 
Marsh v. Lake Forest Hospital
, 166 
Ill. App. 3d
 70, 74-75 (1988), as authority for the proposition that they need not cite legal authority in support of some arguments.

In 
Marsh
 the appellant cited a statute, but no case law, for one argument.  The appellee moved to strike that portion of the appellant's brief for failure to cite pertinent authority.  The court noted that the statute itself constituted pertinent authority.  
Marsh
, 166 
Ill. App. 3d
 at 75.  Because no court had previously interpreted the statute, the court held that the failure to cite case law did not waive the issue.  The court in 
Marsh
 did not disturb consistent authority holding that the failure to cite any pertinent authority in support of an argument forfeits review of the issue.  See 
Eisenberg v. Industrial Comm'n
, 337 
Ill. App. 3d
 373, 383 (2003).  

Next, Urban and Terzakis claim that they challenged the trial court's subject matter jurisdiction in their original briefs on appeal.  They refer us to pages on which they argued that the use of the phrase "which the court accepts" in the contempt order rendered the order too vague for enforcement.  The original briefs do not mention, let alone attack, the trial court's subject matter jurisdiction.

Nonetheless, we still have an obligation to vacate any order the trial court entered without subject matter jurisdiction.  Accordingly, we will now address the new challenge to that jurisdiction.  Urban and Terzakis claim that Urban never had a 
res
 subject to the turnover order, and therefore the court lacked jurisdiction to order them to enter the turnover order.  They cite 
Maggio
, 333 U.S. 56, 92 L. Ed. 476, 68 S. Ct. 401, as authority.

In 
Maggio
 the trial court ordered the bankrupt petitioner to turn over certain merchandise, and the court held him in contempt when he failed to deliver the specified merchandise.  The appellate court affirmed the contempt finding, although the court apparently believed the petitioner no longer possessed the merchandise at issue.  On a further appeal, the Supreme Court held that the trial and appellate courts misapplied the presumption that possession by a party at a given time proves continued possession until the party explains how he lost possession.  The Court emphasized that evidence may rebut the presumption and the courts have a duty not to enforce a turnover order when the evidence shows the person so ordered cannot comply.  
Maggio
, 333 U.S. at 65-67, 92 L. Ed. at 484-86, 68 S. Ct. at 406-07.  The Court reiterated the general rule that "it may be permissible, in resolving the unknown from the known, to reach the conclusion of present control from proof of previous possession."  
Maggio
, 333 U.S. at 65-66, 92 L. Ed. at 485, 68 S. Ct. at 406.  The Court remanded the case for the trial court to consider all of the evidence to determine whether to use its contempt power to enforce the turnover order.

Notably, the Supreme Court did not say that proof of lack of possession would leave the trial court without jurisdiction to enter the contempt.  Thus, 
Maggio
 does not support the jurisdictional argument Urban and Terzakis make here.

Moreover, the trial court here properly applied the permissible presumption of continuing possession.  The trial court heard evidence that Urban received funds for operation of the Honeywell property, and Urban transferred its funds to Terzakis and to various entities Urban and Terzakis controlled.  Urban and Terzakis presented no evidence of the purpose of the transfers, as their witness candidly admitted he did not know those purposes.  As the court found, "All that is shown is that 

Urban was depleted for [Terzakis's] own benefit."  In this case, as in 
Armstrong
, the evidence sufficed to show that the corporate officer retained control over the funds, and the court had the authority to use its contempt powers to enforce its turnover order.

Finally, Urban and Terzakis protest our decision to resolve this case without oral argument.  We lack jurisdiction to consider almost all of the substantive arguments the parties raised on this appeal.  We believe that appellate attorneys and this court should devote scarce time to substantial matters this court has jurisdiction to decide.  Accordingly, we deny the petition for rehearing.

FITZGERALD-SMITH and O'MALLEY, JJ., concur.